Caroline K. Simon, J.
Claimant, a patient in Queens General Hospital, on the morning of December 6, 1966 was transferred by ambulance to Creedmoor State Hospital on a two-physician certificate. He arrived at the latter institution at about 9:30 a.m. His hands were hancuffed behind his back. He was accompanied by an ambulance attendant and two police officers of the 110th Precinct.
Mr. Bennett, then 22 years old, was admitted to Building 40 by a senior psychiatrist, who termed him ‘ ‘ restless ”, “ insulting ”, and “ not cooperative ”. He was assigned to Ward 11B located on the eleventh floor of that building. The supervising nurse on the main floor asked permission of the police officer to have the patient taken up to the ward by attendants, who would remove the handcuffs there, returning them and the borrowed key to the policeman waiting in the admissions office. This permission was granted.
Three attendants then escorted Mr. Bennett to the elevator on the main floor. In a subsequent investigation by the Associate Director of the Hospital, two of these attendants stated that the patient became verbally abusive during the elevator trip and was struck in the face by the third attendant. Claimant received a fractured jaw from the blow.
Notice of intention to file a claim was received and filed by the Clerk of the Court of Claims and the Department of Law on February 7,1967. The claim itself was timely filed in both offices on February 24,1967. It alleges negligence of the State of New York in its failure to protect Mr. Bennett from the dangerous and vicious acts of an employee, causing pain and suffering, and the aggravation of a nervous disorder requiring protracted treatment of a depressive reaction. It seeks damages of $78,716.95, which include $1,216 as loss of earnings, medical and hospital expenses of $2,500.95 and $75,000 for personal suffering. The claim has neither been assigned nor tried nor brought before any other court or tribunal for determination.
Mr. Bennett testified that he was struck in the face at least once, and fell to the floor of the elevator. He then lapsed into unconsciousness and his next recollection was lying down in a small room, covered with blood. He said his handcuffs were then removed, he was undressed and cleaned up, and an injection was given to him. He said the pain was quite intense and that he could not sleep for days. He was put to bed and returned to Queens General Hospital by ambulance accompanied by one attendant and without handcuffs.
There he was examined by a dentist, and after some days’ observation his jaw was wired. He was unable to eat solid *308 foods for one and one-half months thereafter while his mouth remained immobilized. On. December 13, 1966 Mr. Bennett was discharged from Queens General Hospital and returned to Creedmoor. Later he was discharged from Creedmoor to his parents’ custody. The wires in his jaw were removed by a private physician. He described the removal as a painful process. He stated that after the wires were out he could eat soft foods, although his jaws, teeth, eyes and face ached for some period thereafter.
On cross-examination Mr. Bennett testified that he was admitted to Loudon Hall in the Brunswick Hospital Center, Amityville, New York where he remained under psychiatric treatment until discharged on November 7,1967. He added that he still receives private psychiatric treatment from a doctor affiliated with that institution.
The Bennett family dentist testified that he examined claimant on November 30, 1967. He had been informed that Mr. Bennett had sustained a fractured jaw. In his examination he found fillings and chips in the teeth requiring.grinding and restoration. He performed this work, which in his professional opinion was directly attributable to the fracture and the wiring. In addition, the dentist stated that further dental work was necessary, and that the need for such work also was the direct result of the injury inflicted upon claimant.
Another attendant present at the attack testified to knowing ‘ ‘ No apparent reason why ’ ’ the patient was hit, adding that though Mr. Bennett was verbally abusive he did not strike his assailant nor make any provocative movement toward him.
Pursuant to § 75' of the Civil Service Law, a hearing in the matter of disciplinary charges against the offending attendant who hit this claimant was held at Creedmoor on December 20, 1966. The hearing officer recommended dismissal, and the attendant’s services were thereafter terminated. He was later charged with felonious assaut, which charge was reduced to third degree assault. A conviction in the New York City Criminal Court resulted and a sentence of six months in the workhouse was imposed.
The court finds that the attendant did intentionally, knowingly and willfully strike the claimant and that the assault was not provoked by physical attack nor warranted under the circumstances by the verbal abuse. Just as the State is held to have constructive notice of defects in roads under its sole control, so it must be held to have constructive notice of the temperament and proclivities of personnel it selects to staff its mental institu *309 tions where the delicate task of rebuilding warped, ill people is undertaken. The assault was the proximate cause of claimant’s injuries. The court further finds the patient was mentally ill, and that his verbal abuse was not of such a nature as to be used in mitigation of damages nor to warrant a finding of contributory negligence. (See St. Pierre v. State of New York, 33 N. Y. S. 2d 151.)
The injuries which claimant suffered were serious and extremely painful, and caused permanent damage to him. Although Mr. Bennett testified that he can chew, bite and talk as he did before the traumatic event, his dentist states his teeth require further remedial work to be in alignment.
Proof was adduced that six months earlier the assailant in this claim had hit a fellow worker. After a hearing it was found that no blame attached to the striking attendant. The court would not premise a finding that the State had notice of the assailant’s proclivities to do physical injury on the hearing record in relation to a different matter and in which no blame was found to be his.
The court does find that the State has a major duty in the care of its wards. The court recognizes the problems of recruitment, training and morale which must be resolved to give wards the care essential to rehabilitate them. The easy excuse when such a shocking incident occurs is to say that the employee stepped out of the scope of his employment by the act. Such an excuse cannot be allowed to substitute for the ceaseless vigilance demanded if the State is to reach the high ideals it has stated and reiterated for its care of the mentally ill.
In the operation of its mental institutions, the State is obligated to exercise a reasonable amount of care in anticipating any risks or hazards to which patients may become exposed. Though it is not an insurer of their safety it owes them the duty of protection against foreseeable injuries, such duty being commensurate with the nature and quality of their physical and mental ailments and conditions.
• Implementation of the doctrine of reasonable care requires the hospital authorities to select and instruct the staff and to include as part of their training the awareness that the patients are not normal, and that their mental aberrations must be coped with in an enlightened and sympathetic manner, so as to avoid the cruel and heartless punishment that, through ignorance, prevailed generations ago. This rules out as a disciplinary measure any physical assault by attendants, regardless of the verbal provocation.
*310 The court is aware that strict adherence to this modern approach is difficult of attainment, but finds that abusive language on the part of a handcuffed patient canndt be the basis for a physical attack, and that the State must respond in damages. “ Words, no matter how coarse and abusive, which tend to excite angry passions never justify a physical assault. ” (Matter of Levy v. World-Telegram, 255 App. Div. 237, 238-239, citing Lee v. Woolsey, 19 Johns. 319.)
Claimant’s employment record as a mechanic began after he obtained his high school diploma and included one year of work for one employer and shorter periods for two other employers. He had been earning $127 a week at his last employment before his hospitalization and injury.
The certified copy of the Queens General Hospital bill showed the cost for claimant’s treatment there to have been $408.45. The dentist’s bill for work already done was $129.
For pain and suffering at the time he was struck, and during the procedures, past, present and future, required to restore Mr. Bennett’s jaw and teeth to normalcy, and for all dental expenses incurred in such restorative process, and for loss of earnings the court awards claimant the sum of $10,000. An allegation of the claim asserts ‘ ‘ Aggravation of a nervous disorder, to wit, a depressive reaction, necessitating’ claimants admission to Loudon Hall, a psychiatric hospital, Amityville, New York, for protracted treatment. ” Though common sense indicates such a traumatic experience as the incident which occurred in the case at bar could be expected to have an effect on the mental health of its victim, no proof was adduced at the trial on this point, other than the fact that the claimant was at Loudon Hall and continues to have psychiatric treatment even to the date of the trial. Therefore, no part of the damage award relates to this allegation.
The State’s motion to dismiss for claimant’s failure to prove a prima facie case of negligence, made at the end of claimant’s case and renewed after the State rested, on which decision had been reserved, is now denied.
The State’s motion to dismiss for claimant’s failure to establish freedom from contributory negligence, made at the conclusion of the trial, on which decision also had been reserved, is now denied.